McGEE, Chief Judge.
 

 *464
 
 I.
 
 Statement of the Facts
 

 April Faison's ("Ms. Faison") residence at 276 Lakeview Drive in Whiteville, North Carolina ("the residence"), was broken into on 4 December 2013. Ms. Faison's adult daughter, Ashley Colson ("Ms. Colson"), lived next door, and discovered the break-in. Ms. Colson called Ms. Faison that afternoon and informed Ms. Faison of the break-in. Ms. Faison came home to find her back door open with the glass broken out of it, the home "tossed," and several items missing, including a flatscreen television ("the television"), a PlayStation 3 videogame system with three video games ("the gaming system"), a laptop computer ("the laptop"), a Canon camera ("the camera"), and two gold earrings ("the earrings"). Ms. Faison called 911 to report the break-in, and police responded. After the police officers left the residence, Ms. Faison and Ms. Colson reviewed video recorded from her home surveillance system that was stored in a DVR box in Ms. Faison's bedroom ("the video"). The video showed a man breaking the glass in the back door to the residence,
 
 *465
 
 entering, and removing items from the residence.
 
 [1]
 
 The man's face was clearly visible in the video.
 

 On 5 December 2013, Ms. Faison informed Detective Trina Worley of the Columbus County Sheriff's Office ("Detective Worley") about the video, and Detective Worley inquired about obtaining a copy of the video.
 

 *405
 
 When Ms. Faison could not figure out how to make a copy of the video, she carried the DVR box to the sheriff's office for law enforcement to view the video. Three detectives plugged in the DVR box and attempted to view the video, but were unable to locate the video.
 

 At trial, Defendant objected to any reference to the video, arguing that the proper foundation had not been laid for admission of the video as evidence. During Ms. Faison's
 
 voir dire
 
 , the trial court determined that Ms. Faison was competent to testify about the video. Ms. Faison testified to the following: The video showed a man break the glass in the back door of Ms. Faison's residence, enter her residence through that door, and then remove items from Ms. Faison's residence. The man's face was clearly visible on the video and there were multiple instances, as the man looked around, when his face was directly visible. The man was not wearing a "hoodie," mask, or hat to obscure his face. Ms. Faison later saw a man walking down the road near her residence whom she believed to be the man in the video. She observed him enter a nearby house. Ms. Faison reported this information to the police, who initiated surveillance of the house and identified the man as Jawanz Bacon ("Defendant").
 

 In accordance with the policy of the Columbus County Sheriff's Office, Detective Worley had a photo lineup prepared, with six pictures (Defendant and five "fillers") of men of similar age, race, height, and build. Captain Soles-an officer not involved in the investigation of the case-and who did not know the facts of the case or the identity of Defendant, administered the lineup to Ms. Faison on 31 December 2013. About thirty minutes later, Captain Soles administered the lineup to Ms. Colson, who was not present at the earlier lineup presentation. Both Ms. Faison and Ms. Colson positively identified Defendant as the man who broke into Ms. Faison's residence. Defendant was arrested on 31 December 2013 and was indicted for felony breaking or entering and felonious larceny. Defendant's indictment for felonious larceny reads as follows:
 

 *466
 
 [D]efendant named above unlawfully, willfully and feloniously did steal, take and carry away a flatscreen television, PlayStation 3 video game system, three video games for PlayStation 3, laptop computer, Canon camera, two gold earrings, the personal property of April Faison, such property having a value of $1,210.00, pursuant to a violation of Section 14-54 of the General Statutes of North Carolina.
 

 Section 14-54 states in relevant part: "Any person who breaks or enters any building with intent to commit any ... larceny therein shall be punished as a Class H felon."
 
 N.C. Gen. Stat. § 14-54
 
 (a) (2015). Although all of the stolen items were taken from Ms. Faison's home, and the television and the earrings belonged to Ms. Faison, the laptop belonged to her daughter, Ms. Colson, and the camera and the gaming system belonged to a friend of Ms. Faison. The stolen items were never recovered.
 

 At trial, Defendant sought to call his grandfather, Jimmy Bacon ("Mr. Bacon"), as an alibi witness. However, the State objected because Defendant had not provided adequate notice of this alibi witness as required by N.C. Gen. Stat. § 15A-905(c)(1). The trial court allowed a
 
 voir dire
 
 of Mr. Bacon in which Mr. Bacon testified that Defendant was with him at his home the entire day of 4 December 2013. However, when questioned, Mr. Bacon could not recall any details as to specific dates of Defendant's stay or what Defendant did during his stay. The trial court ultimately granted the State's motion to exclude Mr. Bacon's testimony.
 

 Defendant moved to dismiss at the close of the State's evidence and again at the close of all evidence, but Defendant's motions were denied. During the charge conference, Defendant pointed out that the State had not presented any evidence to prove the value of the items stolen and, therefore, the jury should not be instructed on felony larceny based upon the stolen items being in excess of $1,000.00. The State maintained that specific evidence of the value of the stolen items was unnecessary because the jury, based upon the nature of the items themselves, could determine that the items had a value of more than $1,000.00. The trial court agreed with the State and instructed the jury on felonious larceny based upon value in
 
 *406
 
 excess of $1,000.00, with misdemeanor larceny as a lesser-included charge. However, the trial court declined to instruct the jury on felony larceny resulting from a breaking or entering. The jury found Defendant guilty of felony breaking or entering and felonious larceny with value in excess of $1,000.00. Defendant appeals.
 
 *467
 
 II.
 
 Analysis
 

 Defendant contends the trial court erred: (1) by denying Defendant's motion to dismiss the larceny charge due to a fatal variance between the indictment and the evidence presented at trial; (2) by failing to dismiss the larceny charge for insufficiency of the evidence as to the value of the stolen items; and (3) by abusing its discretion in excluding Mr. Bacon's alibi testimony.
 

 A.
 
 Fatal Variance in the Indictment
 

 Defendant first argues the trial court erred in denying his motion to dismiss the felonious larceny charge. More specifically, Defendant contends there was a fatal variance between the owner of the stolen property as alleged in the indictment and the proof of ownership of the stolen items presented at trial. We agree in part.
 

 Defendant asks this Court to vacate his felonious larceny conviction. Defendant argues that, while the indictment alleged Ms. Faison to be the owner of all the property stolen from her residence, the evidence at trial demonstrated she was not the owner of the laptop or the gaming system. We agree with Defendant, but note that Defendant failed to address the items properly attributed to Ms. Faison in the indictment-the television and the earrings-and what that means for Defendant's motion to dismiss. Although Defendant concedes that some of the items listed in the indictment were correctly listed as the property of Ms. Faison, he contends that fatal variances with respect to other items included in the indictment require quashing the indictment and further require dismissal of all larceny charges.
 

 In support of his argument, Defendant cites
 
 State v. Seelig
 
 for the proposition that " 'the evidence in a criminal case must correspond to the material allegations of the indictment, and where the evidence tends to show the commission of an offense not charged in the indictment, there is a fatal variance between the allegations and the proof requiring dismissal.' "
 
 State v. Seelig
 
 ,
 
 226 N.C. App. 147
 
 , 162,
 
 738 S.E.2d 427
 
 , 438 (2013) (citation omitted). However, Defendant appears to have overlooked the following paragraph in
 
 Seelig
 
 :
 

 "[A]n indictment 'must allege lucidly and accurately all the essential elements of the offense endeavored to be charged.' " In order to be fatal, a variance must relate to "an essential element of the offense." Alternately, "[w]hen
 
 *468
 
 an averment in an indictment is not necessary in charging the offense, it will be 'deemed to be surplusage.' "
 

 Id
 
 . at 162-63,
 
 738 S.E.2d at 438
 
 (citations omitted).
 

 Defendant provides no argument or citations to any legal authority to support the proposition that a larceny indictment that properly alleges the owner of certain stolen property, but improperly alleges the owner of additional property, must be dismissed in its entirety. Because Defendant fails to make this argument on appeal, it is abandoned.
 
 See
 

 State v. Evans
 
 , --- N.C. App. ----, ----,
 
 795 S.E.2d 444
 
 , 455 (2017) ; N.C.R. App. P. 28 (2017) ("Issues not presented in a party's brief, or in support of which no reason or argument is stated, will be taken as abandoned..... The body of the argument ... shall contain citations of the authorities upon which the appellant relies."). Defendant has abandoned this argument, and we dismiss it.
 

 Assuming,
 
 arguendo
 
 , that Defendant has not abandoned this argument, we find no error.
 

 In North Carolina our courts have been clear that:
 

 The general law has been that the indictment in a larceny case must allege a person who has a property interest in the property stolen and that the State must prove that that person has ownership, meaning title to the property or some special property interest. If the person alleged in the indictment to have a property interest in the stolen property is not the owner
 
 *407
 
 or special owner of it, there is a fatal variance entitling defendant to a nonsuit.
 

 Furthermore, although the law acknowledges that a parent has a special custodial interest in the property of his minor child kept in the parent's residence, that special interest does not extend to a caretaker of the property even where the caretaker had actual possession.
 

 State v. Salters
 
 ,
 
 137 N.C. App. 553
 
 , 555-56,
 
 528 S.E.2d 386
 
 , 389 (2000) (citations omitted).
 

 The indictment in a larceny case is required to allege the ownership of the stolen property in order to: "(1) inform defendant of the elements of the alleged crime, (2) enable him to determine whether the allegations constitute an indictable offense, (3) enable him to prepare for trial, and (4) enable him to plead the verdict in bar of subsequent prosecution for the same offense."
 
 State v. Holley
 
 ,
 
 35 N.C. App. 64
 
 , 67,
 
 239 S.E.2d 853
 
 , 855 (1978) (internal citations and quotations omitted).
 

 *469
 
 Concerning ownership of stolen property, a variance between an indictment and the evidence presented at trial can be fatal: " 'If the proof shows that the article stolen was not the property of the person alleged in the indictment to be the owner of it, the variance is fatal and a motion for judgment of nonsuit should be allowed.' "
 
 State v. Schultz
 
 ,
 
 294 N.C. 281
 
 , 285,
 
 240 S.E.2d 451
 
 , 454 (1978) (citation omitted). "It is, however, sufficient if the person alleged in the indictment to be the owner has a special property interest, such as that of a bailee or a custodian."
 
 Id.
 
 at 285,
 
 240 S.E.2d at
 
 454-55 ;
 
 see also
 

 State v. Carr
 
 ,
 
 21 N.C. App. 470
 
 , 472,
 
 204 S.E.2d 892
 
 , 894 (1974) ;
 
 State v. Smith
 
 ,
 
 266 N.C. 747
 
 , 749,
 
 147 S.E.2d 165
 
 , 166 (1966) (where no fatal variance occurred when a father, who had custody and control of his daughter's pistol at the time the pistol was stolen, was found to be a bailee). The fact that items were stolen from a particular residence does not automatically give rise to a special property interest in the owner of that residence.
 
 See
 

 State v. Eppley
 
 ,
 
 282 N.C. 249
 
 , 259-60,
 
 192 S.E.2d 441
 
 , 448 (1972) (where a fatal variance was found when a stolen shotgun belonged to the homeowner's father, and not the homeowner named in the indictment).
 

 In the present case, while Ms. Faison did have actual possession of all of the stolen items-as they were taken from her home-she was not the owner of the laptop, the camera, or the gaming system. Further, the State failed to produce any evidence that Ms. Faison was a bailee or otherwise had a special property interest in those items.
 

 Id.
 

 The State, relying on
 
 State v. Carr
 
 , argues that a possessor has a special property interest in an item when that person has sole possession, use, and control of the item.
 
 State v. Carr
 
 ,
 
 21 N.C. App. 470
 
 , 471-72,
 
 204 S.E.2d 892
 
 , 893-94 (1974). However,
 
 Carr
 
 is readily distinguishable from the present case because, in
 
 Carr
 
 , a son was found to have a special interest in a vehicle owned by his father's business and the son regarded the vehicle as his own, possessing it at all times and taking it with him to college.
 
 See
 
 id.
 

 When Ms. Faison was asked whether she owned all of the items stolen from her house, she answered: "No..... The laptop was my daughter's, and the ... camera and the game[ing system] was [sic] my friend's." Ms. Faison merely stated that the items were in her possession in her home at the time of the theft, but provided no more information relating to any possible special interest in the property. Not only did the State fail to produce evidence tending to show that Ms. Faison regarded the laptop, the camera, and the gaming system as her own, it also failed to show how Ms. Faison came to possess these items or that she had any special interest in them whatsoever.
 

 *470
 
 The State further argues that "a parent has a special custodial interest in the property of his minor child kept in the parent's residence," and therefore Ms. Faison had a special property interest in her daughter's laptop.
 
 See
 

 State v. Salters
 
 ,
 
 137 N.C. App. 553
 
 , 555-56,
 
 528 S.E.2d 386
 
 , 389 (2000). However, as Defendant points out, Ms. Colson is not the minor child of Ms. Faison, but rather is an adult child who did not live in Ms. Faison's home. Therefore, we distinguish the present case from
 
 Salters
 
 and turn to
 
 Eppley
 
 for guidance. In
 
 Eppley
 
 , no special property interest was found where a father's shotgun was stolen from his son's home, but no evidence
 
 *408
 
 was presented that the person named in the indictment-the son-was a bailee or had any special property interest in the shotgun.
 
 Eppley
 
 ,
 
 282 N.C. at 259-60
 
 ,
 
 192 S.E.2d at 448
 
 . When asked whether she owned all of the items stolen from her house, Ms. Faison answered: "No..... The laptop was my daughter's." Nothing in the evidence beyond Ms. Faison's actual possession of the laptop suggests that she had a special property interest in it. The present case is much like
 
 Eppley
 
 in that Ms. Faison actually possessed an adult relative's property in her home when the property was stolen, but no evidence whatsoever was provided to show that Ms. Faison held any special interest in the property.
 

 We, therefore, hold that the evidence presented at trial was sufficient to demonstrate that Ms. Faison was the owner of the television and the earrings, but that there was a fatal variance between the ownership of the laptop, the camera, and the gaming system as alleged in the indictment, and the evidence of ownership presented at trial.
 

 While we have located no authority directly on point regarding a fatal variance in ownership of some, but not all, of the items alleged to have been stolen, in general: "A defect in an indictment is considered fatal if it
 
 wholly fails to charge some offense
 
 ... or fails to state some essential and necessary element of the offense of which the defendant is found guilty."
 
 State v. Wilson
 
 ,
 
 128 N.C. App. 688
 
 , 691,
 
 497 S.E.2d 416
 
 , 419 (1998) (emphasis added) (internal citations and quotations omitted). Further, "[w]hen an averment in an indictment is not necessary in charging the offense, it will be 'deemed to be surplusage.' "
 
 Seelig
 
 ,
 
 226 N.C. App. at 163
 
 ,
 
 738 S.E.2d at 438
 
 (citations omitted). As the indictment included all the required elements alleging Defendant stole the television and the earrings from Ms. Faison's residence, the indictment properly alleged all the elements of larceny. Any allegations in the indictment that were not necessary to support the larceny charge-whether felony larceny or the lesser-included offense of misdemeanor larceny-are deemed to be surplusage.
 
 Id
 
 . We are therefore left with an indictment that reads as follows:
 

 *471
 
 The defendant named above unlawfully, willfully and feloniously did steal, take and carry away a flatscreen television, ... [and] two gold earrings, the personal property of April Faison, such property having a value of $1,210.00, pursuant to a violation of Section 14-54 of the General Statutes of North Carolina.
 

 "It is usually held ... that the verdict of the jury is not vulnerable to a motion in arrest of judgment because of defects in the indictment, unless the indictment
 
 wholly
 
 fails to charge some offense cognizable at law or fails to state some essential and necessary element of the offense of which the defendant is found guilty."
 
 State v. Gregory
 
 ,
 
 223 N.C. 415
 
 , 418,
 
 27 S.E.2d 140
 
 , 142 (1943) (internal citations omitted) (emphasis added). Where there are less serious defects, it is proper to object by motion to quash the indictment or to demand a bill of particulars.
 

 Id.
 

 We therefore affirm the trial court's denial of Defendant's motion to dismiss the larceny charge based upon an alleged fatal variance between the indictment and the evidence presented at trial, and we address Defendant's additional arguments without considering the surplusage contained in the larceny indictment.
 

 B.
 
 Evidence of Value to Support Felonious Larceny
 

 Next, Defendant argues the trial court erred in failing to dismiss the felonious larceny charge for insufficiency of the evidence. Specifically, Defendant contends there was insufficient evidence as to the value of the stolen items. We agree.
 

 We review the denial of a motion to dismiss
 
 de novo
 
 .
 
 State v. Smith
 
 ,
 
 186 N.C. App. 57
 
 , 62,
 
 650 S.E.2d 29
 
 , 33 (2007). "Upon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense."
 
 State v. Barnes
 
 ,
 
 334 N.C. 67
 
 , 75,
 
 430 S.E.2d 914
 
 , 918 (1993) (citation omitted). The evidence is viewed in the light most favorable to the
 
 *409
 
 State.
 
 State v. Rose
 
 ,
 
 339 N.C. 172
 
 , 192,
 
 451 S.E.2d 211
 
 , 223 (1994).
 

 N.C. Gen. Stat. § 14-72
 
 provides two separate bases for elevating misdemeanor larceny to felonious larceny relevant to this appeal: (1) "Larceny of goods of the value of more than one thousand dollars ($1,000) is a Class H felony[,]"
 
 N.C. Gen. Stat. § 14-72
 
 (a) (2015) ; and (2) "[t]he crime of larceny is a felony, without regard to the value of the property in question, if the larceny is ... [c]ommitted pursuant to a violation of ... [N.C. Gen. Stat. §] 14-54 [.]"
 

 *472
 

 N.C. Gen. Stat. § 14-72
 
 (b)(2) (2015).
 
 N.C. Gen. Stat. § 14-54
 
 (a) states: "Any person who breaks or enters any building with intent to commit any felony or larceny therein shall be punished as a Class H felon."
 
 N.C. Gen. Stat. § 14-54
 
 (a) (2015).
 

 The language of the indictment appears to have charged Defendant with felonious larceny pursuant to both N.C.G.S. § 14-72(a) and 14-72(b)(2) :
 

 [D]efendant named above unlawfully, willfully and feloniously did steal, take and carry away a flatscreen television ... [and] two gold earrings, the personal property of April Faison, such property having a value of $1,210.00, pursuant to a violation of Section 14-54 of the General Statutes of North Carolina.
 
 [2]
 

 However, the trial court expressly declined to instruct the jury on the charge of felony larceny committed pursuant to N.C.G.S. § 14-54 -intent to commit larceny after breaking or entering. When the State requested that the trial court instruct the jury on felonious larceny after breaking or entering, the judge responded:
 

 You may be right, and when it's over, you show me and I'll apologize to you and tell you I'm wrong. But we tried it this way off this indictment, and we are going to stay with the instructions off this indictment, which to my mind are value in excess of $1,000.
 

 We have long recognized that "a defendant may not be convicted of an offense on a theory of his guilt different from that presented to the jury."
 
 State v. Smith
 
 ,
 
 65 N.C. App. 770
 
 , 773,
 
 310 S.E.2d 115
 
 , 117 (1984). For example: "[A] conviction for felony larceny may not be based on the value of the thing taken when the trial court has instructed the jury only on larceny pursuant to burglarious entry."
 
 Id
 
 . Thus, because the jury was only instructed on felonious larceny based upon the stolen items having a value in excess of $1,000.00, Defendant's conviction could not have been based on larceny pursuant to breaking or entering.
 

 The trial court instructed the jury solely on felonious larceny based upon the stolen property having a value in excess of $1,000.00 pursuant to N.C.G.S. § 14-72(a). The trial court also instructed the jury on the lesser-included offense of misdemeanor larceny. In response to
 
 *473
 
 Defendant's objection to the lack of evidence of value presented at trial, the trial court ruled that the value of the stolen items was a question of fact for the jury to decide, even though the State presented no specific evidence concerning the value of any of the stolen items.
 

 However, this Court has held that a jury cannot estimate the value of an item without any evidence put forth to establish a basis for that estimation.
 
 See
 

 In re J.H.
 
 ,
 
 177 N.C. App. 776
 
 , 778-79,
 
 630 S.E.2d 457
 
 , 459 (2006) (where the jury could not presume that a five-year-old Ford Focus had a value over $1,000.00 absent any evidence of the car's condition or value). Though certain property may, by its very nature, be of value obviously greater than $1000.00, like the Ford Focus in
 
 J.H.
 
 , the television and the earrings in this matter are not such items. Because the State presented no evidence upon which the jury could reasonably ascertain the combined value of the television and the earrings, the State failed to meet its burden of proving the value element of felonious larceny. We hold that the State failed to present sufficient evidence at trial to support the charge of felonious larceny and, therefore, the trial court erred in denying Defendant's motion to dismiss that charge.
 

 *410
 
 It is proper to vacate and remand for entry of judgment and resentencing on a lesser-included offense when a trial court instructed the jury on a lesser-included offense, along with the greater offense, and the jury necessarily found that all the elements necessary to establish the lesser-included offense were proven, but the evidence presented at trial was insufficient to prove an essential element of the greater offense.
 
 State v. Snead
 
 ,
 
 239 N.C. App. 439
 
 , 448,
 
 768 S.E.2d 344
 
 , 350 (2015) ;
 
 see also
 

 State v. Jolly
 
 ,
 
 297 N.C. 121
 
 , 130,
 
 254 S.E.2d 1
 
 , 7 (1979) ("in finding defendant guilty of [the greater offense], the jury necessarily had to find facts establishing the [lesser offense] ... [so] it follows that the verdict returned by the jury must be considered a verdict of guilty of [the lesser offence]"). Accordingly, we vacate Defendant's conviction of felonious larceny and remand for entry of judgment and re-sentencing for misdemeanor larceny.
 

 C.
 
 Defendant's Alibi Witness
 

 Finally, Defendant argues that the trial court abused its discretion by excluding Defendant's alibi witness as a sanction for Defendant's violation of discovery rules. We disagree.
 

 The trial court granted the State's motion to exclude Mr. Bacon based upon Defendant's failure to give timely notice that he intended to call Mr. Bacon as an alibi witness. When the State complies with its
 
 *474
 
 discovery obligations, the defendant is required to give notice of any alibi defense within twenty working days after the case is set for trial. N.C. Gen. Stat. § 15A-905(c)(1).
 

 (a) If at any time during the course of the proceedings the court determines that a party has failed to comply with this Article or with an order issued pursuant to this Article, the court in addition to exercising its contempt powers may
 

 ....
 

 (3) Prohibit the party from introducing evidence not disclosed[.]
 

 (b) Prior to finding any sanctions appropriate, the court shall consider both the materiality of the subject matter and the totality of the circumstances surrounding an alleged failure to comply with this Article or an order issued pursuant to this Article.
 

 N.C. Gen. Stat. § 15A-910 (2015).
 

 "A trial court's decision concerning the imposition of discovery-related sanctions ... may only be reversed based upon a finding that the trial court abused its discretion, which means that the trial court's ruling was so arbitrary that it could not have been the result of a reasoned decision."
 
 State v. Allen
 
 ,
 
 222 N.C. App. 707
 
 , 733,
 
 731 S.E.2d 510
 
 , 528 (2012) (internal citation, quotation, and bracketing omitted).
 

 In making its decision, the trial court considered the materiality of Mr. Bacon's proposed testimony. When asked about specifics regarding Defendant's stay at his home, Mr. Bacon testified as follows:
 

 Q. Now, on the day in question, that is, December 4, 2013, was [Defendant] residing with you?
 

 A. Yes.
 

 Q. And how long had that been the case?
 

 A. He comes and stay with me weeks at a time. I remember the incident good, because it was my birthday. December 2nd is on my birthday.
 

 Q. So
 
 he had come to visit you on December 2nd
 
 ?
 

 A. Yeah.
 

 Q. And he had stayed over through December 4th?
 

 *475
 
 A. Yeah.
 

 Q. Were you aware of his whereabouts over the course of December 4th?
 

 A. Yeah. He was there with me.
 

 Q. For what period of time was he there with you?
 

 A. He was there earlier.
 
 He was there a couple days before my birthday and stayed until-I remember my wife taking him home and bringing-and coming back with the newspaper. The newspaper come out on Thursday. And she read about it in the newspaper. And I said, "Well, how could he do that when he was here
 
 ?"
 

 Q. In particular, sir, what we are asking about is-you may not have been with him
 
 *411
 
 every second of every moment, every minute.
 
 What period of time can you definitely testify as to his whereabouts
 
 ?
 

 A. I don't live on no big estate, you know. I live in a small house.
 
 I had an eye on him. He was right there. He didn't
 

 go nowhere
 
 .
 

 Q. For December 12th-excuse me-December 4th?
 

 A. Yeah.
 
 Until that Thursday. That's when his grandma took him home
 
 .
 

 Q. And
 
 do you recall what date that was
 
 , sir?
 

 A. It was-
 
 I know the newspaper come out on Thursday. Because my birthday is on the 2nd. So he was there until Thursday. I can't recall what date that was
 
 .
 

 Q. All right, sir.
 

 A. But
 
 it had to happen before then, because it was already in the newspaper when my wife came home with it
 
 . (Emphasis added).
 

 The incident occurred on 4 December 2013. Generally, Mr. Bacon's testimony was very vague concerning Defendant's whereabouts during the relevant time period. Mr. Bacon could not account for Defendant's whereabouts for any specific part of 4 December 2013, even had he been able to establish that Defendant was residing with him on that day.
 

 More specifically, Mr. Bacon ties the date he remembers Defendant being with him-4 December 2013-to an article in the paper that
 
 *476
 
 apparently identified Defendant as the suspect in the 4 December 2013 incident. Mr. Bacon testified that he knew Defendant was with him on 4 December 2013 because the very next day, "[t]he newspaper come [sic] out[.] And [my wife] read about it in the newspaper. And I said, 'Well, how could he do that when he was here?' " However, Defendant was not arrested until 31 December 2013, and no article related to his arrest could have been published before that date. Therefore, Mr. Bacon's testimony suggested he was remembering Defendant being at Mr. Bacon's residence on a date after 31 December 2013. This contradicts the record, which shows that, after his arrest on 31 December 2013, Defendant was in custody until 9 October 2014. Given that no article could have been published about Defendant's arrest before Defendant was arrested and given that Defendant spent 283 days incarcerated after his arrest, Mr. Bacon's testimony regarding his wife taking Defendant home and bringing back the alleged newspaper article is not reliable.
 

 Considering the materiality of Mr. Bacon's proposed testimony, which we find minimal, and the totality of the circumstances surrounding Defendant's failure to comply with his discovery obligations, we cannot find that the trial court abused its discretion in excluding this testimony pursuant to N.C.G.S. § 15A-910.
 
 [3]
 

 Allen
 
 ,
 
 222 N.C. App. at 733
 
 ,
 
 731 S.E.2d at 528
 
 .
 

 Even were we to assume,
 
 arguendo
 
 , that it was error for the trial court to exclude Mr. Bacon's testimony as a discovery sanction, Defendant has failed to show that the error was prejudicial. In order to show prejudice requiring reversal, Defendant must show "that there is a reasonable possibility that a different result would have been reached had the error not been committed. N.C. Gen. Stat. § 15A-1443(a) (2005)."
 
 State v. Jones
 
 ,
 
 188 N.C. App. 562
 
 , 569,
 
 655 S.E.2d 915
 
 , 920 (2008). As discussed above, Mr. Bacon's testimony was disjointed, imprecise, and seemingly contradicted by the facts. We do not believe Mr. Bacon's testimony would have provided meaningful alibi evidence for Defendant on 4 December 2013.
 

 *477
 
 Ms. Faison recognized Defendant as he was walking down the street and reported this to the
 
 *412
 
 police, who followed up and identified Defendant. Both Ms. Faison and Ms. Colson
 
 independently
 
 identified Defendant, with near certainty, as the perpetrator after they had, according to their testimony, viewed the video of the actual break-in and had received multiple good looks at Defendant during the break-in and larceny. We conclude there was no reasonable possibility that the jury would have reached a different result had Mr. Bacon's alibi testimony been allowed.
 
 See
 

 Jones
 
 ,
 
 188 N.C. App. at 570
 
 ,
 
 655 S.E.2d at 920
 
 .
 

 Finally, Defendant's ineffective assistance of counsel claim is premature and should have been initially considered pursuant to a motion for appropriate relief by the trial court.
 
 State v. Parmaei
 
 ,
 
 180 N.C. App. 179
 
 , 185,
 
 636 S.E.2d 322
 
 , 326 (2006) ("claims of ineffective assistance of counsel should be considered through motions for appropriate relief and not on direct appeal"). However, we hold that Defendant's ineffective assistance of counsel claim must fail for the same reasons mentioned immediately above.
 

 To prevail on an ineffective assistance of counsel claim, Defendant must demonstrate not only that the trial counsel's conduct fell below an objective standard of reasonableness, but must also prove that his attorney's deficient performance prejudiced Defendant such that Defendant was deprived of a fair trial.
 
 State v. Braswell
 
 ,
 
 312 N.C. 553
 
 , 562,
 
 324 S.E.2d 241
 
 , 248 (1985). For the reasons discussed above, we hold that Defendant has failed to meet the burden of showing either that his attorney's performance fell below an objective standard of reasonableness, or that any deficient performance of his attorney prejudiced Defendant. Defendant's claim of ineffective assistance of counsel is without merit.
 

 III.
 
 Conclusion
 

 Defendant does not challenge his conviction for felony breaking or entering, so that conviction stands. We hold that the trial court erred in denying Defendant's motion to dismiss with respect to the charge of felony larceny, but that the evidence and the elements properly found by the jury support entry of judgment for the lesser-included offense of misdemeanor larceny. We therefore vacate Defendant's conviction for felony larceny and remand for resentencing based upon misdemeanor larceny. Defendant's arguments related to the exclusion of Mr. Bacon's testimony fail.
 

 NO ERROR IN PART, VACATED IN PART, AND REMANDED.
 

 Judges TYSON and INMAN concur.
 

 [1]
 

 Ms. Faison testified that she did not think about her surveillance equipment until after the police had left her residence.
 

 [2]
 

 We have removed the language deemed surplusage in our analysis of Defendant's first argument above, and only consider the property of Ms. Faison in our analysis-the television and the earrings.
 

 [3]
 

 Defendant argues that he should be awarded a new trial because the trial court failed to make findings of fact, as required by N.C.G.S. § 15A-910(d), beyond that notice had not been given. However, the failure to make findings of fact does not
 
 per se
 
 require a new trial.
 
 State v. Adams
 
 ,
 
 67 N.C. App. 116
 
 , 122,
 
 312 S.E.2d 498
 
 , 501 (1984) ("the failure to make such findings here thus does not merit reversal or remand"). In the present case, Defendant fails to show how the exclusion of the single alibi witness equates to the "extreme sanction" of dismissal of charges or what prejudice Defendant suffered from the lack of detailed findings of fact.
 
 State v. Foster
 
 ,
 
 235 N.C. App. 365
 
 , 379,
 
 761 S.E.2d 208
 
 , 218 (2014). Given the circumstances of this case, we decline to hold that the trial court abused its discretion by excluding the testimony of Defendant's alibi witness.
 
 Adams
 
 ,
 
 67 N.C. App. at 122
 
 ,
 
 312 S.E.2d at 501
 
 .